UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                      Chapter 11

ODYSSEY (II) DP III, LLC,                Case No. 8:11-bk-
d/b/a MAGNOLIA POINT PLAZA,
f/k/a CRF-MAGNOLIA POINT, LLC       *Emergency Relief Requested*

        Debtor.
_____/

### DEBTOR'S EMERGENCY MOTION FOR ENTRY
### OF INTERIM AND FINAL ORDERS AUTHORIZING
### USE OF CASH COLLATERAL AND GRANTING
### REPLACEMENT LIENS PURSUANT TO SECTIONS 105(a),
### 361, 363, 541 AND 552 OF THE BANKRUPTCY CODE AND RULE
### 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

---

**STATEMENT OF RELIEF REQUESTED**

The Debtor seeks authority to use cash collateral to fund its operating expenses and the costs of administering this Chapter 11 case in accordance with a proposed budget attached hereto and to provide replacement liens as described below as adequate protection for the interests in the cash collateral. The Debtor believes that the lender listed herein may assert a valid and perfected security interest in the cash collateral. As adequate protection, the Debtor proposes to grant to the lender replacement liens to the same extent, validity, and priority as the security interests held by the lender as of the Petition Date.

---

ODYSSEY (II) DP III, LLC (the "**Debtor**"), by and through its undersigned attorneys, files its Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Motion**") and requests the entry of interim and final orders approving the Debtor's use of cash collateral. In support of the Motion, the Debtor respectfully represents as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334.

2. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 361 and 363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## Summary of Relief Requested and Summary of Prepetition Secured Indebtedness

4. On or about July 30, 2008, , the Debtor executed and delivered to Banco Popular North America ("**Banco Popular**" or the "**Lender**"), that certain Promissory Note in the principal amount of $3,075,000.00 (the "**Note**"). To secure payment of the Note, on or about July 30, 2008, the Debtor executed and delivered to Banco Popular that certain Mortgage and Security Agreement pursuant to which the Debtor purported to grant to Banco Popular a lien on a shopping center known as Magnolia Point Plaza (the "**Shopping Center**") in Ocala, Florida. Further, pursuant to an Assignment of Leases, Rents, and Profits, the Debtor purported to assign its interest in rents and leases generated at the Shopping Center.

5. Accordingly, the Lender may assert that it has a lien on the rents and leases at the Shopping Center and that it therefore has an interest in the Debtor's cash collateral within the meaning of 11 U.S.C. § 363(a) (the "**Cash Collateral**"). As of the

Petition Date, Banco Popular asserts that it is owed approximately $2,589,559.13 under the Note.

6. The Debtor intends to use the Cash Collateral in the continued operation of its business and in accordance with the budget (the "**Budget**") attached as **Exhibit A** and by reference incorporated herein.

7. Accordingly, the Debtor seeks the entry of an interim order authorizing the use of Cash Collateral (the "**Interim Order**") to avoid immediate and irreparable harm to the estate pending a final hearing and the entry of a final order.

8. The significant provisions of the Interim Order are as follows:[1]

   (a) <u>Interim Relief</u>. The Order shall be granted on an interim basis, pending a final hearing on the Motion.

   (b) <u>Budget</u>. The Debtor's use of Cash Collateral will be materially consistent with the Budget. The Budget initially covers the four week period beginning November 14, 2011 - Interim Order at ¶ 2; and

   (c) <u>Adequate Protection</u>. The following shall constitute good and sufficient adequate protection to the Lender for the Debtor's use of the Cash Collateral:

   i. <u>Adequate Protection Liens</u>. The Debtor shall provide the Lender with replacement liens identical in extent, validity and priority as such liens existed on the Petition Date – Interim Order at ¶ 4; and

   ii. <u>Reporting Requirements</u>. The Debtor shall provide on a weekly basis profit and loss statements on a cash basis to counsel for the Lender – Interim Order at ¶ 3.

---

[1] The summary of the Interim Order is provided for the convenience of the Court and other parties in interest. To the extent there are conflicts between this summary and the Interim Order annexed hereto as <u>Exhibit B</u>, the terms of the Interim Order shall govern. Capitalized terms used in the summary but not otherwise defined herein shall have the meaning(s) set forth in the Interim Order.

(d) <u>Event of Default</u>: It shall be an event of default if the Debtor exceeds the 10% variance (the "**Variance**") on an aggregate basis provided for in the Interim Order; provided, however, in the event of a default, the Debtor's authority to use Cash Collateral shall continue until the Lender obtains an order by appropriate motion after notice and a hearing requiring the Debtor to cease using Cash Collateral. Notwithstanding the foregoing, subject to the provisions of paragraph ten of the Interim Order, expenditures in excess of the Variance or not on the Budget will not be deemed to be unauthorized use of Cash Collateral, unless the recipient cannot establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure.

9. At the initial hearing on this Motion, the Debtor will seek to use Cash Collateral in the amount of approximately $6,685.00 or such other amount as is necessary to avoid immediate and irreparable harm on an interim basis pending entry of a final order on this Motion.

## Background

10. On November 11, 2011, (the "**Petition Date**"), the Debtor filed with this Court its Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

11. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

12. No previous application for the relief sought herein has been made by the Debtor to this Court or any other court.

### A. *Description of Debtor's Business*

13. The Debtor is an affiliate of Century Realty Funds, Inc., which is part of the Century Realty Funds Group (the "**CRF Group**") of privately held companies. The

CRF Group has been in business since the 1970s and owns and manages commercial retail centers and office buildings, self-storage facilities, over 1,000 residential apartment units, over 7,500 manufactured home and recreational vehicle spaces, and 18 skilled health care facilities consisting of over 1,500 beds.

14. One facet of the CRF Group's operations is a group of entities doing business under the umbrella of the "Odyssey" name – denominated, for example, "Odyssey Operating Partnership, Ltd.", "Odyssey Operating Partnership II, Ltd.", "Odyssey Residential, Inc.," and so forth. The first of the Odyssey entities began doing business in 2005. These Odyssey entities, engaged in the commercial real estate business, collectively own and operate approximately fifty-two properties.

15. The Debtor owns the Shopping Center, a 14,270 square foot retail center, consisting of two buildings, which is located at 2602 SW 19th Avenue in Ocala, Florida. The Shopping Center is situated on a signalized corner in front of Wal-Mart Supercenter, Stein Mart, and a Michaels.

16. On the Petition Date, the Shopping Center had an occupancy rate of approximately 75%.

**B.    *Reasons for Filing Chapter 11***

16. Traditionally, the ready liquidity of active credit markets would have allowed the Debtor either to sell the high-quality Shopping Center at issue or to obtain refinancing that would pay off the existing debt. The global economic crisis which now envelops the country has made the refinancing or sale of commercial real estate in Florida very difficult. Some banks themselves may be under pressure to reduce their exposure to

Florida real estate and find it difficult to extend loans, much less make new loans. Thus, as a general rule, buyers cannot obtain loans to fund the purchase, or (if they have cash or financing available) they want significant discounts from true value that would, in this case, wipe out the significant hard-dollar investments of the principals. "Take-out" lenders are cautious and have underwriting standards that make new loans problematic. Generally, therefore, a frequent solution to loan difficulties in today's market is the extension of the maturity of loans at reasonable interest rates and with the elimination or relaxation of financial covenants, coupled where appropriate with subordinate financing or equity contributions to supplement cash flow of the underlying project. This is the approach that the Debtor's affiliates have been pursuing, with generally very good results.

17. Absent such agreements, Chapter 11 remains the only, or at least the best, legal vehicle to fairly restructure debts. This Chapter 11 case seeks to restructure the debt owed to Banco Popular. The Debtor will in its plan of reorganization attempt to eliminate technical, non-monetary defaults, modify loan covenants, and extend the maturity of the loan.

18. The declaration of default by Banco Popular left the Debtor with no choice but to file a chapter 11 petition in an effort to preserve the value of the Shopping Center through a restructuring of the debt for the benefit of all creditors.

### Relief Requested and Legal Authority for the Relief Requested

19. The Debtor believes that Banco Popular will assert a lien on the rental revenue generated at the Shopping Center. On information and belief, Banco Popular

may assert that the rental revenue is Cash Collateral within the meaning of Section 363(a) of the Bankruptcy Code. The Debtor reserves its rights to contest the validity and priority of Banco Popular's lien. The Debtor files this Motion and seeks entry of an order authorizing the use of Cash Collateral generally and for purposes which include the following:

(a) care, maintenance, and preservation of the Debtor's assets;

(b) payment of necessary suppliers, utilities, and other business expenses;

(c) other payments necessary to sustain continued business operations;

(d) costs of administration in this Chapter 11 case; and

(e) payments for tenant improvements for the Shopping Center.

20. The Debtor requests authority to use Cash Collateral immediately to pay the operating expenses set forth on the Budget attached hereto as **Exhibit A** and incorporated herein by reference, which are necessary to continue the operation of the Debtor's business, to maximize the return on its assets, and to otherwise avoid irreparable harm and injury to its business and its estate.

21. There is insufficient time for a final evidentiary hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, to be held before the Debtor must arguably use Cash Collateral. If this Motion is not considered on an expedited basis and if the Debtor is denied the ability to immediately use Cash Collateral, there will be direct and immediate harm to the continuing operation of the Debtor's business. In order to continue its business activity in an effort to achieve successful

reorganization, the Debtor needs to use Cash Collateral in its ordinary business operations. The inability of the Debtor to meet its ordinary business expenses will require the Debtor to discontinue normal operations which will result in irreparable injury to the Debtor and its chances for reorganization. Any such discontinuation would also adversely impact upon the value of any secured party's collateral. Indeed, it is in the best interests of all creditors and the Debtor that the Debtor uses its Cash Collateral since such usage will preserve the value of any secured party's collateral. Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure authorizes this Court to hold an immediate preliminary hearing on this Motion.

22. "Cash Collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a). Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may authorize the Debtor to use Cash Collateral as long as the applicable secured creditors consent or are adequately protected. *See, e.g., In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984); *see also In re McCormick*, 354 B.R. 246, 251 (Bankr. C.D. Ill. 2006) (to use the cash collateral of a secured creditor, the debtor must have the consent of the secured creditor or must establish to the court that the secured creditor's interest in the cash collateral is adequately protected).

23. In the event Banco Popular asserts a lien on Cash Collateral, in exchange for the Debtor's ability to use Cash Collateral in the operation of its business, the Debtor proposes to grant, as adequate protection, to Banco Popular a replacement lien equal in extent, validity, and priority to the lien held by Banco Popular as of the Petition Date.

The Debtor asserts that any interests of Banco Popular will be adequately protected by the replacement liens, the budgetary constraints discussed above, and the reporting requirements discussed above.

24. If allowed to use Cash Collateral, the Debtor believes that it can stabilize its business operations and maintain going concern value. Otherwise, the Debtor's business operations will cease and its assets will have only liquidation value.

### Notice

25. Notice of this Motion has been given: (i) by the Court's CM/ECF system to the U.S. Trustee, and (ii) by United States first class mail to all known secured creditors of the Debtor and the 20 Largest Unsecured Creditors. The Debtor submits that, given the emergency nature of the relief requested herein, no other or further notice need be given.

### Basis for Emergency Relief

26. The facts previously set out herein clearly justify an immediate hearing on this Motion. If the Debtor cannot utilize Cash Collateral, the Debtor will be unable to pay operating expenses necessary to continue the operation of the Debtor's business and will be irreparably harmed. The Debtor has narrowly tailored the relief requested on an emergency basis in order to allow it to survive pending a final Cash Collateral hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, the Debtor respectfully requests that this Court: (1) enter the Interim Order granting the instant Motion and authorizing the interim use of Cash Collateral, the proposed form of which is attached as **Exhibit B**, (2) schedule a

preliminary hearing on the Motion at the earliest possible time, (3) schedule a final cash collateral hearing in accordance with Bankruptcy Rule 4001(b)(2), (4) authorize the Debtor to use the Cash Collateral in the operation of its business, and (5) grant such other and further relief as may be just and proper.

/s/ <u>Edward J. Peterson, III</u>
Edward J. Peterson, III (FBN 0014612)
Stichter Riedel Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
(813) 229-0144 – Phone
(813) 229-1811 – Fax
epeterson@srbp.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct of the foregoing *Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure* has been furnished on this 11th day of November, 2011, by either the Court's CM/ECF Noticing System, E-Mail or by U.S. Mail to:

Office of the United States Trustee
20 Largest Unsecured Creditors

Banco Popular North America
Attn: Jennifer Groves, VP
2 N. Orange Ave., 6th Floor
Orlando, FL 32801

Banco Popular North America
c/o Anna Fernandez, Esquire
One Biscayne Tower
2 South Biscayne Blvd., 21st Floor
Miami, FL 33131
ahernandez@broadandcassel.com

/s/ Edward J. Peterson, III
Edward J. Peterson, III

Beltone Hearing Center
Attn: Doug Ressler
10300 US Hwy. 4415, #6
Leesburg, FL 33788

City of Ocala
P.O. Box 30749
Tampa, FL 33630

J & B Hot Wings dba Wing Zone
Attn: James Donnelly
3152 S. Cygnet Terrace
Inverness, FL 34450

Scottrade
Attn: Accounts Payable (ST#0925)
P.O. Box 31759
Saint Louis, MO 63131

Shanes Rib Shack
Attn: Penta Excel Group, LLC
1396 NE 20th Ave., #300
Ocala, FL 34470

Sprint
Attn: MS KSOPHT0101-Z2040
6391 Sprint Parkway
Overland Park, KS 66251

Taipei Garden
Attn: Yong Sui Chen
2602 SW 19th Ave Rd., #203
Ocala, FL 34471

Tutoring Club of Ocala
Attn: Dennis Abbatiello
5501 NE 6th Court
Ocala, FL 34479

# EXHIBIT A

ODYSSEY (II) DP III, LLC
MAGNOLIA POINT
WEEKLY CASH PROJECTION

| | Week Ended 11/20/2011 | Week Ended 11/27/2011 | Week Ended 12/4/2011 | Week Ended 12/11/2011 | TOTAL |
|---|---|---|---|---|---|
| **CASH RECEIPTS** | | | | | |
| RENTAL INCOME | $ — | $ — | $ 3,919 | $ 10,814 | $ 14,733 |
| PROPERTY INSURANCE INCOME | — | — | 103 | 113 | 216 |
| PROPERTY TAX INCOME | — | — | 423 | 947 | 1,370 |
| COMMON AREA MAINTENANCE | — | — | 431 | 967 | 1,398 |
| SALES TAX | — | — | 293 | 770 | 1,063 |
| MISCELLANEOUS INCOME | — | — | — | — | — |
| TOTAL RECEIPTS | $ — | $ — | $ 5,169 | $ 13,611 | $ 18,780 |
| **CASH EXPENDITURES FROM OPERATIONS** | | | | | |
| UTILITIES | $ — | $ — | $ 871 | $ — | $ 871 |
| COMMON AREA MAINTENANCE | — | 797 | 1,257 | — | 2,053 |
| LEGAL & PROFESSIONAL | — | — | — | — | — |
| CRO FEES | — | — | — | 3,500 | 3,500 |
| REAL ESTATE TAXES | — | — | — | — | — |
| SALES TAX | 260 | — | — | — | 260 |
| UTILITY DEPOSITS | — | — | 400 | — | 400 |
| TOTAL EXPENDITURES FROM OPERATIONS | $ 260 | $ 797 | $ 2,528 | $ 3,500 | $ 7,085 |
| NET CASH FROM OPERATIONS | $ (260) | $ (797) | $ 2,641 | $ 10,111 | $ 11,694 |

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                              Chapter 11

ODYSSEY (II) DP III, LLC,                           Case No. 8:11-bk-
d/b/a MAGNOLIA POINT PLAZA,
f/k/a CRF-MAGNOLIA POINT, LLC

    Debtor.
_____/

**INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS PURSUANT TO SECTIONS 105(a), 361, 363, 541 AND 552 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE[1]**

THIS CASE came on for hearing on November ____, 2011, upon the Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Motion**") (Doc. No. ____). The Motion seeks the entry of interim and final orders authorizing the use of "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code. The Court, having reviewed the Motion and having heard the argument and proffers of counsel, finds that the Motion should be granted to prevent immediate and irreparable harm to the Debtor's business. Accordingly, for the reasons stated orally and recorded in open Court, which shall constitute the decision of the Court, it is

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Motion.

**ORDERED** that:

1. The Motion is granted on an interim basis pending a final hearing to be conducted by the Court on _____, at _____.

2. The Debtor is authorized to use Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code) including, without limitation, cash, deposit accounts, accounts receivable, and rental revenue in accordance with the budget (the "**Budget**"), a copy of which is attached hereto as **Exhibit A**, so long as the aggregate of all expenses for each week do not exceed the amount in the Budget by more than ten percent (10%) for any such week on a cumulative basis (the "**Variance**"). Notwithstanding the foregoing, subject to the provisions of paragraph ten of this Order, expenditures in excess of the Variance or not on the Budget will not be deemed to be unauthorized use of Cash Collateral, unless the recipient cannot establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure.

3. Beginning the week of November 14, 2011, the Debtor shall provide on a weekly basis profit and loss statements on a cash basis to counsel for the Lender by email by 5:00 p.m. (EST) on Friday of the following week.

4. The Lender is granted as adequate protection post-petition replacement liens against the Debtor's Cash Collateral to the same extent, validity, and priority as existed as of the Petition Date.

5. The Debtor shall maintain insurance coverage for the Collateral in accordance with the obligations under the loan and security documents.

6. This Order is not and shall not be construed as determinative as to whether or not any creditor has a valid lien on any property of the Debtor or its estate. This Order is not and shall not be construed as determinative as to the extent or amount of any secured claim associated with any such lien.

7. This Order is without prejudice to the Debtor's right to challenge the extent, validity, or priority of any lien or claim of any creditor, and is likewise without prejudice to the right of any creditor to seek additional relief concerning Cash Collateral by subsequent motion and nothing contained in this Order shall be deemed to constitute a waiver of any party's rights.

8. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

9. This Order is without prejudice to the Debtor's rights to seek authority by separate motion to pay monies in excess of the amounts set forth in the Budget.

10. It shall be an event of default if the Debtor exceeds the Variance without the prior written consent of Lender, which consent shall not be unreasonably withheld; provided, however, in the event of a default, the Debtor's authority to use Cash Collateral shall continue until the Lender obtains an order by appropriate motion after notice and hearing requiring the Debtor to cease using Cash Collateral.

11. All persons and entities owing monies to the Debtor are authorized and directed to pay the monies to the Debtor, without setoff, which sums shall upon collection by the Debtor constitute Cash Collateral.

**DONE AND ORDERED** at Tampa, Florida, on _____.

Catherine Peek McEwen
United States Bankruptcy Judge

Copies to be provided via CM/ECF service